UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| W. B.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KRISIT NOEM, et al.,<br><br>　　　　　Defendants. | Case No. 25-cv-03407-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Docket Nos. 4, 8 |

## I.　INTRODUCTION

Now before the Court is Plaintiff W.B.'s[1] motion pursuant to Federal Rule of Civil Procedure 65(b) for a temporary restraining order ("TRO"). Defendants are Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS") and Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE") (collectively, "the Government"). Plaintiff asks the Court to temporarily enjoin Defendants from taking any enforcement action against her arising directly or indirectly from the termination of Plaintiff's Student and Exchange Visitor Information Systems ("SEVIS") records.

There are at least five other cases that have been filed in this district by F-1 students. Case Nos. 4:25-cv-03140-JSW, 5:25-cv-03244-NW, 3:25-cv-03292-SI, 3:25-cv-03323-AGT, 5:25-cv-

---

[1] Plaintiff W.B. also has pending a motion to proceed under a pseudonym. Dkt. No. 4. Given the sensitivity of this matter, and the real fear of retaliation, the Court **GRANTS** Plaintiff's motion. Plaintiff shall be referred to as W.B. in all public filings, with any identifying information redacted. Defendants, upon receiving Plaintiff's real name and other personal identifiers, must refrain from disclosing such information to any third party or in the public record, except as required to carry out their official duties, and only under seal if filed with the Court.

03383-SVK. The lowest-numbered case has been assigned to Judge Jeffrey White. Under the Northern District's Civil Local Rules, Judge White is considering whether to relate the cases; if deemed related, this case would be reassigned to him. *See* Civil L.R. 3-12; Docket No. 14 (This Court's "Referral for Purpose of Determining Relationship").

The Court **GRANTS** Plaintiff's motion for a TRO to preserve the status quo pending further briefing and a hearing on this matter. The Court notes TROs have been granted in at least three of the potentially related cases. *See* Case Nos. 4:25-cv-03140-JSW, Dkt. No. 16; 5:25-cv-03244-NW, Dkt. No. 13; 3:25-cv-03292-SI, Dkt. No. 18.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The limited record before the Court indicates that Plaintiff is a former international student currently working pursuant to post-graduate employment authorization in this District. Compl. ¶ 3. She has been present in the United States on an F-1 visa.[2] *Id*. ¶ 16. Plaintiff is a native and citizen of the People's Republic of China who currently resides in San Francisco, California. *Id*. She has resided in the U.S. since 2013 when she entered as a F-1 nonimmigrant student to pursue a bachelor's degree at the University of Missouri. *Id*. After obtaining a Bachelor of Science degree, she continued her studies going on to earn a master's degree and then a PhD in Mathematics from the University of Florida. *Id*. The University of Florida issued her PhD in August of 2022. *Id*. Plaintiff was employed, pursuant to valid Post-graduate STEM OPT[3] employment authorization, and working on machine learning model optimization in the context of medical image processing for a San Francisco based medical technology company at the time of the SEVIS termination in this case. *Id*.

---

[2] Each academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. Compl. ¶ 20. An institution must first file an application for School Certification through the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed Internet-based system to track and monitor schools and noncitizen students in the United States. 8 C.F.R. § 214.3.

[3] "Optional Practical Training ('OPT')" "consists of temporary employment that is 'directly related to the student's major area of study.'" *Jie Fang v. Dir. United States Immigr. & Customs Enf't,* 935 F.3d 172, 175 (3d Cir. 2019) (quoting 8 C.F.R. § 214.2(f) (1)(ii)). OPT usually occurs at the end of the completion of studies. Compl. ¶ 23.

2

On April 5, 2025, Plaintiff was notified by email from the University of Florida International Center that her SEVIS record was terminated on April 4, 2025. *Id.* ¶ 4. She was not notified by Defendants of the termination or the basis for the termination beyond the information relayed to her from the University of Florida which indicated that her registration had been terminated because she was "otherwise failing to maintain status-- Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Id;* Mot. Exhibit D. No citation to any specific facts or provision of law was offered and, Plaintiffs allege, no violation of status or other valid basis for termination of SEVIS registration occurred. Compl. ¶ 4. The University of Florida's F-1 International Student Services Center told Plaintiff:

> "It was brought to our attention that your SEVIS record was terminated on April 04, 2025, by SEVP. The termination reason gives is as follows: "OTHERWISE FAILING TO MAINTAIN STATUS- Individual identified in criminal records check and/or has their VISA revoked. SEVIS record has been terminated."
> Please note that your current I-20 (as well as any employment eligibility) and your F1 status are no longer valid, and you should make plans to depart the U.S. as soon as possible. Additionally, if you have any dependents in F-2 status, their SEVIS record is also no longer valid.
> Finally, we strongly recommend that you consult your own personal immigration attorney for guidance on next steps."

Mot., Exhibit D, at 1-2.

The termination of her SEVIS record has resulted in Plaintiff's inability to continue her employment. *Id*. While W.B.'s current employment authorization was set to expire on May 15, 2025, her employer had entered W.B. in the H-1B nonimmigrant visa lottery and had received notification of selection by USCIS in that lottery of W.B.'s registration. Mot. Exhibit C. The company is in the process of preparing an H-1B nonimmigrant visa petition seeking change of status on behalf of W.B. to H-1B nonimmigrant status. *Id.* The timely filing of an H-1B nonimmigrant visa petition would serve to extend W.B.'s OPT-based work authorization through October 1, 2025 (or until the petition is denied), the date on which she would be eligible to change to H1B nonimmigrant status.[4] However, termination of W.B.'s SEVIS registration makes her

---

[4] A OPT-employment authorized student may receive a 'cap-gap' extension of OPT-based employment authorization to allow the student to remain in the United States and be eligible to continue to work and then to change from F-1 to H-1B nonimmigrant status where the student has been selected in the H-1B nonimmigrant visa lottery and has had an H-1B nonimmigrant visa

3

1  ineligible for this extension and for any change of status in the United States. 8 CFR

2  214.2(f)(5)(vi)(A), (B).  Thus, because of Defendants' actions, Plaintiff's continued employment

3  in the United States has been made impossible.  Compl. ¶ 4.

4      Plaintiff acknowledges a minor misdemeanor charge that was dismissed pursuant to

5  California Penal Code § 1001.95 (misdemeanor diversion).  *Id.* ¶ 62-63.[5]

6      The Government stated at the hearing that only a student's school or ICE can update the

7  status to "terminated," and that here, ICE did this unilateral action.

## III.    LEGAL STANDARD

Though Plaintiff brought this motion as an *ex parte* motion, the Court ordered Defendants to file an opposition, and they did. Dkt. No. 15. Defendants also appeared at the hearing on this motion.  Thus, the Court treats this motion as a regular TRO.

A plaintiff seeking a TRO "must establish that [plaintiff] is likely to succeed on the merits, that [plaintiff] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [plaintiff's] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (holding that, in the Ninth Circuit, "serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met").  Where, as here, the Government is a party, the last two factors merge.  *See Drakes Bay*

---

petition with request for change of status filed on their behalf. 8 CFR 214.2(f)(5)(vi)(A), (B). The cap-gap extension provides a temporary bridge between F-1 and H-1B status, allowing students to remain in the United States between the end of their academic program and the beginning of the fiscal year, when the student's H-1B visa status commences. Mot. at 8.

[5] According to Plaintiff, Plaintiff W.B. was arrested on one occasion in San Francisco, California on suspicion of shoplifting in December of 2023. The case was resolved in San Francisco Superior Court pursuant to California Penal Code § 1001.95 (misdemeanor diversion).  Diversion was successfully completed and the case was dismissed and later sealed pursuant to California Penal Code § 851.87 (" In any case where a person is arrested and successfully completes a prefiling diversion program administered by a prosecuting attorney in lieu of filing an accusatory pleading, the person may petition the superior court that would have had jurisdiction over the matter to issue an order to seal the records pertaining to an arrest and the court may order those records sealed as described in Section 851.92.")

*Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

## IV. ANALYSIS

### A. Irreparable Harm

In Defendants' papers and at the hearing, Defendants argue this SEVIS termination serves merely as a "flag" to other agencies to further investigate a student's file; this argument strains credulity. The SEVIS termination notice states the action in the absolute; it does not say that the termination of F-1 status is under investigation or that W.B. may lose her F-1 status. Instead, it says that her status is terminated. Moreover, the SEVIS termination has real-world legal consequences as the letter from the University of Florida demonstrates. In a number of contexts, such termination notice has been treated as having a legal effect upon Plaintiff's F-1 status, F-1 visa, I-20 status, and her ability to apply for an H-1B visa. *See* Case Nos. 4:25-cv-03140-JSW, Dkt. No. 16; 5:25-cv-03244-NW, Dkt. No. 13; 3:25-cv-03292-SI, Dkt. No. 18; *see also* Declaration at Docket No. 16, Exhibit I at 6 (Administrator for student affairs noting that if a student's SEVIS record is terminated, the school can no longer print the student's I-20, the school can no longer comply with federal regulations, and the student will, thus, fall out of status).[6]

Tellingly, the DHS itself has so assumed. In *Fang*, the DHS sent a letter to students who had their status revoked stating: "*Since your SEVIS record has been Terminated* you no longer have valid F-1 nonimmigrant status and must either file for reinstatement of your nonimmigrant student status with U.S. Citizenship and Immigration Services (USCIS) or depart the United States immediately." 935 F.3d 172, 177 (3rd Cir. 2019) (emphasis added). This understanding is consistent with the University of Florida's statement in their email to Plaintiff, wherein Plaintiff was told she could no longer work, that her F-1 status was terminated, and that she should leave the United States immediately. Defendants at the hearing attempted to argue that the students'

---

[6] The Court considers the Declaration of Brian Childs in Case No. 1:25-cv-419, filed here at Docket No. 16, though it may not be admissible as evidence in its present form in this case much in the same way such evidence may be considered under Rule 56(c)(2). The Government did not object to the contents of this declaration at the hearing. The Government could not state whether it was true that changes to SEVIS status affect the school's ability to maintain compliance with federal regulations, thus making the student fall out of legal status.

5

1   situation in *Fang* was distinguishable from here because in *Fang* the *school* made the

2   determination that student's SEVIS record was terminated. It hardly makes sense that a *school's*

3   termination has greater legal operative effect than ICE's determination here. Critically,

4   notwithstanding the government's assertion that the University got it wrong, at the hearing on this

5   motion, the Government would not commit to reaching out to schools who have sent these types

6   of messages to their international students to clarify that there is no legally operative effect from

7   this termination notice. The Government also did not have a response to the Plaintiff's

8   representation that the SEVIS termination affects Plaintiff's school's ability to maintain Plaintiff's

9   compliance with federal immigration regulations and Plaintiff's I-20.

10   Accordingly, the Court concludes Plaintiff has shown the likelihood of irreparable harm

11   absent relief. Plaintiff has studied for almost 10 years to obtain her PhD and gain her current

12   employment and career trajectory. Mot. at 10. Plaintiff has had to cease employment and is

13   experiencing the resulting loss of income and financial stability as a result. *Id*. While a loss of

14   employment does not necessarily constitute irreparable harm if "the temporary loss of income"

15   can ultimately be recovered, *Sampson v. Murray*, 415 U.S. 61, 90 (1974), here, Plaintiff's loss of

16   employment involved more than a mere loss of income. It also affected Plaintiff's future ability to

17   remain in the United States and to obtain H-1B nonimmigrant status. Mot. at 10.

18   Plaintiff also faces a risk of immediate detention or removal from the United States, and

19   the psychological harm that comes from this fear. In other cases, with similarly situated

20   individuals, the Government has refused to provide assurances that the plaintiffs will not be

21   arrested while their litigation proceeds, which only bolsters this point. *See, e.g.*, Case No. 5:25-

22   cv-03244-NW (N.D. Cal.), Dkt. No. 10-1; Case No. 1:25-cv-00133-SETSM (D. N.H.), Dkt. No.

23   8-1.

24   And finally, as noted below, there are serious questions whether Plaintiff's Fifth

25   Amendment right to due process has been violated as a result of the stigmatizing denotation that

26   her F-1 status has been terminated. "[T]he deprivation of constitutional rights 'unquestionably

27   constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

28   *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

6

Plaintiff have shown a likelihood of irreparable injury.

B.    <u>Likelihood of Success on the Merits</u>

    1.    <u>APA Claim</u>

Plaintiff has shown a likelihood of success and at the very least has shown serious questions going to the merits of her claim under the Administrative Procedure Act.

The threshold issue on the merits is whether there is "final" agency action which opens to door for redress under the APA. To be final the action must mark the "consummation" of the agency's decision-making process, and the action must determine a "right[ ] or obligation[ ]," "from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Plaintiff argues the termination is a final agency action for purposes of the APA. *See, e.g., Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 (3rd Cir. 2019) (holding that order terminating SEVIS and F-1 visa status was final agency action for jurisdictional purposes). Defendant argues this is not a final agency action and is merely a "data entry" change and that "Plaintiff's SEVIS record is not the same thing as her F-1 nonimmigrant status." Opp. at 8; *see also Chandraprakash Hinge v. Lyons*, Civil Action No. 25-1097 (RBW), 2025 U.S. Dist. LEXIS 71594, at *11 (D.D.C. Apr. 15, 2025) (Defendants in similar actions across the country announcing their position that termination of SEVIS registration may have no impact on a student's nonimmigrant status in the United States). Plaintiff notes, and the Court agrees, this "position appears novel and is contrary to the settled understanding of the academic and legal community," Mot. at 2, n.1, as noted above.

As to the propriety of the termination notice, neither of the grounds Defendants offered— "Individual identified in criminal records check and/or has their VISA revoked"— to revoke her SEVIS status comport with 8 C.F.R. § 214.1(d).[7] *See, e.g., Roe v. Noem*, No. CV 2540-BU-DLC,

---

[7] For failure to maintain F-1 student status under the SEVIS system, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a

7

2025 WL 1114694, at *3 (D. Mont. April 15, 2025) (granting TRO on APA claim on similar facts: student alleged DHS unlawfully terminated F1-status in SEVIS system and cited reasons did not comport with statutory or regulatory requirements); *Isserdasani v. Noem*, No. 25cv-283-WMC, 2025 WL 1118626 (W.D. Wis. April 15, 2025) (same). There is no evidence Plaintiff has had her VISA revoked. There is no evidence that Plaintiff has committed a "crime of violence." *Borden v. United States*, 593 U.S. 420, 427 (2021) (defining a crime of violence as 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'")

Plaintiff has demonstrated, at the very least, serious questions regarding the legality of DHS's termination of her SEVIS registration. There is substantial evidence that the agency's decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A), (C-D).

### 2. Fifth Amendment Due Process Claim

Though Plaintiff did not fully brief this claim in her motion, Defendants argue Plaintiff is unlikely to succeed on her Due Process Claim because she does not have a property interest in her SEVIS registration. However, the Court finds a colorable claim for a violation of Plaintiff's liberty interest in her SEVIS registration. The termination notice that Plaintiff has engaged in conduct warranting termination of her F-1 status. As the record suggests this negative insulation is false. And it has resulted in concrete harm – loss of employment. *Cf. Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170 (9th Cir. 2008), *rev'd and rem'd on other grounds* by *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010) (explaining the "stigma-plus" doctrine, whereby a "liberty interest may be implicated 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to [them]' when 'a right or status previously recognized by state law was distinctly altered or extinguished.') (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)).

---

potential sentence of more than a year, "constitute a failure to maintain status."

8

Plaintiff has effectively been placed on a list of students with "terminated" SEVIS status. Neither of Defendants' reasons for SEVIS termination on Plaintiff's records comports with the record. Thus, the SEVIS termination appears to be inaccurate. The inaccurate public record has now, at minimum, created stigma to Plaintiff's personhood and legal status, and has resulted in the loss of the ability to maintain employment and legal status. Plaintiff has thus been wrongly classified and suffered a concrete harm as a result. There is thus at least a serious question whether her due process rights have been violated.

C.  Balance of Equities and Public Interest

The final two factors—merged together here because the Government is the Defendant—favor Plaintiff. As noted above, the harm threated to Plaintiff is substantial – loss of employment and living under the threat of deportation.

On the other hand, the government has failed to identify and real harm from the TRO sought by Plaintiff. According to the government, the notice does not affect Plaintiff's immigration status and visa. It is only a flag which indicates that her status might change. Hence the proposed TRO would not impair any governmental operation. At most, the government suggests that the "flag" of the termination notice serves to alert other enforcement agencies that investigation into the Plaintiff's status might be warranted. But nothing prevents the USCIS or ICE from communicating the need for investigation to other enforcement agencies through other more traditional means. It seems odd that these agencies would rely on a public registration record to communicate with another agency.

It is true that "[t]he public interest is served by compliance with the APA." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021) (internal citation omitted). But on the current record, Plaintiff has maintained compliance with the statutory regulations that govern F-1 nonimmigrant status. Restraining the Government from further action against her would not endanger public safety. And while there is a public interest in the Government being able to maintain accurate records as they relate to immigration laws, there is no governmental interest in maintaining *inaccurate* records. Under the government's own theory of the case, wherein

Plaintiff's F-1 status remain intact, but the SEVIS termination notice says otherwise, the SEVIS notice is inaccurate.

D.     Waiver of Security

Finally, under the circumstances of this case and because the TRO should not result in any financial damage to Defendants, the Court waives the requirement that Plaintiff give an amount of security.

//
//
//

10

## V. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's motion for a TRO to preserve the status quo pending further briefing and a further hearing on this matter as follows:

(1) Defendants are enjoined for twenty-eight days from arresting and incarcerating Plaintiff W.B. pending resolution of this proceeding; and

(2) Defendants are enjoined for twenty-eight days from transferring Plaintiff W.B. outside the jurisdiction of this District pending the resolution of this proceeding; and

(3) Defendants are enjoined for twenty-eight days from imposing any legal effect that otherwise may be caused by the termination of Plaintiffs' SEVIS status or the potential unlawful revocation of her F-1 visa; and

(4) Defendants are enjoined from taking any action to retaliate against Plaintiff W.B. for the filing of this case; and

(5) Defendants, upon receiving Plaintiff's real name and other personal identifiers, must refrain from disclosing such information to any third party or in the public record, except as required to carry out their official duties, and only under seal if filed with the Court.

The Court set a hearing on a preliminary injunction to Tuesday, May 20, 2025, at 9AM. Defendants' Opposition is due May 2, 2025. Plaintiff's Reply is due May 9, 2025. This is subject to change pending any referral order.

**IT IS SO ORDERED**.

Dated: April 23, 2025

_____
EDWARD M. CHEN
United States District Judge